IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02427-MSK-MJW

COLORADO CIVIL RIGHTS COMMISSION,

      Plaintiff,

v.

WELLS FARGO BANK AND COMPANY;
WELLS FARGO BANK, N.A.; and
WELLS FARGO MORTGAGE,

      Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO REMAND**
_____

**THIS MATTER** comes before the Court on Plaintiff Colorado Civil Rights Commission's ("CCRC") Motion to Remand (**#6**), the Defendants' (collectively "Wells Fargo") Response (**#9**), and CCRC's Reply (**#11**). Having considered the same, the Court **FINDS** and **CONCLUDES** as follows.

## I.   Jurisdiction

This case was removed from the District Court of the State of Colorado in Jefferson County to this Court by Wells Fargo based on diversity jurisdiction under 28 U.S.C. § 1332(a). CCRC's Motion to Remand argues that diversity jurisdiction does not exist. Therefore, the Court exercises its inherent authority to determine its own jurisdiction. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002).

## II.   Issue Presented

The ultimate issue presented is whether the Court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332(a).  In the Motion to Remand, CCRC contends that jurisdiction is lacking because the parties are not completely diverse.[1] CCRC contends that it acts as an arm of the State of Colorado which has no citizenship for federal diversity purposes.  Wells Fargo responds that although this action is brought by CCRC rather than a particular individual, the claims are brought *on behalf of* an individual citizen of the state, notably Juliet A. Moores, who is a citizen of Colorado.  This distinction, Wells Fargo contends, allows the Court to find diversity of citizenship.[2]

Thus, to determine whether diversity jurisdiction exists, the Court must first determine whether CCRC asserts claims for the State of Colorado in a  *parens patriae* capacity.

## III.   Facts

According to the Complaint **(#1-1)**, Ms. Moores sought to refinance her mortgage loan on a residential property at 23499 Otowi Road, Indian Hills, Colorado.  Although she was married, Ms. Moores sought to refinance the loan in her name without the involvement of her husband. She applied to Wells Fargo, which required Ms. Moores's husband to participate in and sign

---

[1] The parties do not dispute that Wells Fargo has adequately demonstrated that the amount in controversy exceeds $75,000.

[2] Notably, this is a different argument than that presented in the Notice of Removal **(#1)**. In that filing, Wells Fargo argued that the citizenship of the Plaintiff was Colorado based solely on CCRC's status as an agency the State of Colorado.  *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274, 280 (1977)) (addressing the arm-of-the-state analysis).  Regardless of the theory on which Wells Fargo proceeds, however, it retains the burden of demonstrating facts sufficient to support subject matter jurisdiction in this Court.  *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289–90 (10th Cir. 2001).

documents as a non-borrowing spouse.  Although this was not acceptable to Ms. Moores, she did

not withdraw her application, understanding that if she moved forward with the loan and

complied with Wells Fargo's requirements, the interest rate was "locked in."  Wells Fargo,

however, mistakenly cancelled Ms. Moores's application.  By the time it was reinstated, Ms.

Moore's credit score had fallen four points and, as a result, Wells Fargo denied her loan

application.

Ms. Moores submitted a complaint to the CCRC in which she alleged that Wells Fargo

had unlawfully discriminated against her based on her marital status.[3]  The CCRC found probable

cause to believe that Wells Fargo had acted unlawfully, and as required by Colo. Rev. Stat. § 24-

34-504(4.1), formally notified Wells Fargo of Ms. Moores's complaint and its determination.

Wells Fargo elected to have the claims resolved in a civil action rather than at an administrative

hearing.

Pursuant to its statutory authority, *see* Colo. Rev. Stat. § 24-34-505.5, CCRC commenced

this action in the Colorado District Court for Jefferson County.  CCRC brought three claims

asserting unlawful discrimination based on marital status in violation of Colorado's Fair Housing

laws, Colo. Rev. Stat. § 24-34-502.[4]  It requested numerous remedies without differentiation

---

[3] Discrimination in housing practices, including the provision of financing, based on marital status is unlawful under Colorado law.  *See* Colo. Rev. Stat. § 24-34-502.

[4] Claim One asserts unlawful discrimination in the terms, conditions, privileges/facilities, and services for Wells Fargo's alleged use of different qualification criteria for Ms. Moores and refusal to negotiate with her regarding the terms of the refinance loan. Claim Two asserts unlawful discrimination in the provision of housing based on Wells Fargo's requirement that Ms. Moores' husband sign the loan documents as a non-borrowing spouse. Claim Three asserts unlawful  discrimination in a residential real estate transaction by subjecting Ms. Moores to stricter borrowing standards due to her marital status and requiring her non-borrowing spouse to sign the mortgage loan documents.

among the claims.  The requested  remedies can be categorized in four groups.  The first group is

comprised of forms of injunctive relief to address Wells Fargo's lending practices: (1) an order of

the Court directing Wells Fargo to cease and desist in practices that discriminate based on marital

status; (2) a permanent injunction prohibiting future discrimination by Wells Fargo based on

marital status; and (3) a mandatory injunction directing Wells Fargo to implement unspecified

affirmative actions to ensure the future, non-discriminatory provision of housing services to Ms.

Moores and others similarly situated.  The second form of relief is a request for imposition of

civil penalties against Wells Fargo as provided by Colo. Rev. Stat. § 24-34-508(1)(f).  The third

type of relief requested is specific to Ms. Moores: (1) an award of damages for economic loss,

emotional and mental distress; and (2) the costs and fees associated with her securing alternative

financing.  The fourth type of relief is for costs and attorney fees associated with this action.

## IV.   Standard of Review

Generally, the party invoking federal jurisdiction bears the burden of establishing subject

matter jurisdiction.  *See Martin*, 251 F.3d at 1289–90.  When a case has been removed from state

court, the defendant who removes the action bears the burden of establishing that removal is

proper.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  Removal

statutes are to be strictly construed and all doubts are resolved against removal.  *See Fajen v.*

*Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

Removal of a case to federal court is only appropriate if the case could have been initiated

in federal court in the first instance.  28 U.S.C. § 1441(a).  In this case, removal is premised on

diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Diversity jurisdiction exists when the case

involves a dispute "between . . . citizens of different states" and the amount in controversy

exceeds $75,000.  28 U.S.C. § 1332(a)(1).  To meet the diversity requirement, there must be complete diversity between all plaintiffs and all defendants.  Put another way, no defendant can be a citizen from the same state as any plaintiff.  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  For purposes of diversity jurisdiction, states are not considered to be citizens of any state.  *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

To determine citizenship, a court looks beyond the parties named in the Complaint, instead  determining who are the real parties in interest to the controversy.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).  Generally, the term "real party in interest" pertains to the person or entity who has a substantial and substantive legal interest in the case.  *See, e.g.*, *United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230, 2235 (2009); *Illinois v. SDS West Corp.*, 640 F.Supp.2d 1047, 1050 (C.D. Ill. 2009); Black's Law Dictionary, 9th ed. 2009 (defining real party in interest as "[a] person entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefits from the action's final outcome).

## V.   Analysis

Wells Fargo contends that the real party in interest in this action is Ms. Moores, who is a citizen of Colorado.  CCRC admits that although Ms. Moores may benefit from the action, the real party in interest is the State of Colorado which seeks to exercises its quasi-sovereign interest on behalf of all citizens of Colorado.

At this juncture, it is not necessary to determine whether Ms. Moores is a real party in interest or would merely benefit by CCRC's success in this action.  The primary question is whether the State of Colorado is a real party in interest exercising its quasi-sovereign interest in a *parens patriae* role.  If so, this Court has no jurisdiction pursuant to 28 U.S.C. § 1332(a) and

1441(b).[5]

The first issue is what approach should be used to determine whether the State of Colorado is the real party in interest and, if so, what interest it asserts.[6] There are two common approaches used to resolve this inquiry—th "claim-by-claim" approach and the "wholesale approach." The "claim-by-claim" approach is a bit of a misnomer because the approach actually focuses on the remedies requested, rather than the claims asserted. *See, e.g.*, *West Virginia v. Comcast Corp.*, 705 F.Supp.2d 441, 450–51 (E.D. Penn. 2010); *Connecticut v. Levi Strauss & Co.*, 471 F.Supp. 363, 371 (D. Conn. 1979). The "wholesale approach" views the Complaint as a whole and determines whether, in its entirety, the Complaint seeks to protect a *parens patriae* interest.

Wells Fargo urges use of the "claim-by-claim" approach. It relies upon *Comcast Corp.*, 705 F.Supp.2d at 450–51; *Levi Strauss*, 471 F.Supp. at 371; and *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262–64 (1972), to demonstrate the approach's utility. Upon careful review of these cases, the Court finds the "wholesale approach" to be better suited to the inquiry in this case.

The most recent authority cited by Wells Fargo is *West Virginia v. Comcast Corp.*, 705 F.Supp.2d 441, 450–51 (E.D. Penn. 2010). *Comcast* was an action brought pursuant to the Class

---

[5] Federal jurisdiction in cases brought by a State against a citizen of another State is granted by 28 U.S.C. § 1251(b)(3) which establishes original but not exclusive jurisdiction over such actions by the United States Supreme Court.

[6] States or state agencies generally participate as parties in lawsuits in four capacities: (i) to pursue the State's sovereign interests, which include the exercise of sovereign power (*i.e.*, making and enforcing laws within the State) and interactions with other States; (ii) in support of a proprietary interest, in which the State is essentially acting as a private party; (iii) to pursue the interests of a particular private party, in which the State is merely a nominal party; and (iv) in its capacity of *parens patriae*, literally parent of the country. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601–602 (1982).

Action Fairness Act of 2005 ("CAFA"), the jurisdiction for which is set out in 28 U.S.C.

§ 1332(d).  This section creates a different test for diversity than that found in 28 U.S.C. 1332(a).

The diversity test under CAFA is minimal diversity—only one member of the plaintiff class

(either named or unnamed) must have diverse citizenship as compared to any one defendant.[7]  As

noted by the court in *Comcast*, the analytical framework chosen "has a powerful impact on the

court's ultimate conclusion" as to whether a state is the real party in interest.  The court in

*Comcast* selected the "claim-by-claim" approach because the statutory objective of CAFA was to

expand federal jurisdiction, the express language of CAFA required only a minimal showing of

diversity, and because such analytical framework had been endorsed by the Fifth Circuit in a

similar CAFA case, *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir

2008).

    Without commenting on the wisdom of use the "claim-by-claim" approach in CAFA

cases, this matter is distinguishable.  The applicable jurisdictional statute here is 28 U.S.C.

§ 1332(a), which requires complete diversity and is strictly interpreted because the matter was

removed.  In addition, the remedies sought by CCRC are not correlated to discrete claims, thereby

making a division based on remedies inappropriate.  Indeed, the state statutes that give rise to the

requested remedies provide for both compensatory damages to those particularly harmed and

injunctive relief and penalties that arguably benefit other citizens in Colorado.

    Wells Fargo also relies upon *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262–64 (1972),

which focused upon requested remedies in determining what relief the State of Hawaii could seek

in a *parens patriae* capacity for violation of federal antitrust law.  Interpreting federal law, the

---

[7]  *See e.g.*, *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 n.24 (11th Cir. 2007).

Court held that the State of Hawaii could not pursue a claim for treble damages.

This case is also distinguishable from the instant matter in several respects. First, the issue in *Standard Oil Co.* did not concern whether there was federal court diversity jurisdiction; jurisdiction existed under 28 U.S.C. § 1331. Second, the issue was limited to whether the State of Hawaii could assert a claim for treble damages pursuant to federal antitrust statutes. Third, the Court was not deciding whether the State of Hawaii was a real party in interest or the nature of the claims it brought; the Complaint clearly denominated the State of Hawaii as the plaintiff proceeding in *parens patriae*. Although the opinion elucidates the meaning of *parens patriae* actions by states and limits the ability of states to assert damage claims for violation of federal antitrust law, it is not instructive with regard to the methodology to be used to determine whether a state is a real party in interest asserting quasi-sovereign rights in a *parens patriae* capacity.

Finally, Wells Fargo relies on *Connecticut v. Levi Strauss & Co.*, 471 F.Supp. 363, 371 (D. Conn. 1979). *Levi Strauss* involved various claims by the State of Connecticut for violations of state law antitrust provisions. Similar to the case at hand in a procedural context, Connecticut sought remand to state court after the action it initiated was removed to federal court. Connecticut argued that there was no federal jurisdiction—neither federal question nor diversity jurisdiction. With regard to the diversity question, the Court evaluated each of the four types of monetary awards that Connecticut sought, characterizing each as an element of a "money claim." The Court determined that both elements of diversity jurisdiction—diversity and amount in controversy—were not simultaneously met for any single element. As to the requests to recover overcharges, to impose a civil penalty, and for attorney fees, the Court concluded that these were asserted by Connecticut in a *parens patriae* role. Therefore, Connecticut had no citizenship for

purposes of diversity jurisdiction.  As to the refund of overcharges, the Court concluded that while the real parties in interest were the consumers who had been overcharged, the amount in controversy was not met for any single consumer.  Although this case utilized a "claim-by-claim" approach, it gave no justification for doing so, nor did it provide any reasoning for its decision to separate a single claim into "elements" determined by the type of monetary award sought.

These cases do not persuade this Court that a "claim-by-claim" analysis is useful here.  In this case, all remedies sought are tied to all of the claims, the pertinent statutes upon which the claims are based expressly provide for all of the remedies requested,[8] and there is no stated justification such as in *Comcast* to depart from the "wholesale approach" used by the majority of courts.  *See, e.g.*, *Illinois v. AU Optronics Corp.*, 2011 U.S. Dist. LEXIS 61561, at *15–17 (N. D. Ill. Jun. 6, 2011) (unpublished); *Connecticut v. Moody's Corp.*, 2011 U.S. Dist. LEXIS 780, at *10 (D. Conn. Jan. 5, 2011) (unpublished);  *SDS West*, 640 F.Supp.2d at 1052; *Hood v. Microsoft Corp.*, 428 F.Supp.2d 537, 545 (S.D. Miss. 2006); *Wisconsin v. Abbott Labs*, 341 F.Supp.2d 1057, 1062 (W.D. Wis. 2004); *Kansas ex rel. Stovall v. Home Cable, Inc.*, 35 F.Supp.2d 783, 785–86 (D. Colo. 1998).

Thus, viewing the Complaint as a whole, the Court must determine whether CCRC is acting for the State of Colorado in its *parens patriae* role and whether the claims asserted aim to protect the State's quasi-sovereign interests.  There is no dispute that CCRC is an agency of the state of Colorado charged with enforcement of state laws including those that form the basis of the claims in this action.  Thus, the only question is whether CCRC seeks to enforce state law in

---

[8]  *See,e.g.*, Colo. Rev. Stat. § 24-34-508 (providing for actual damages, civil penalties, cease and desist orders, and affirmative action requiring compliance for violations of Colorado's Unfair Housing Practices laws).

service of Colorado's interest as *parens patriae* to eradicate unlawful discriminatory practices against Colorado citizens.

The doctrine of *parens patriae* recognizes that a State may bring an action to protect its "quasi-sovereign interests." These are interests that do not arise from a State's granted powers or its interest in property, but instead are general interests in the well-being of its citizens. There is no categorical test for determining the scope of quasi-sovereign interests, but the Supreme Court has provided some guidance in *Alfred Snapp & Son,Inc., v. Puerto Rico ex re. Barez,* 458 U.S. 592, 607 (1982). *Snapp* teaches that to bring a *parens patriae* action, the State must articulate a concrete interest separate and apart from the interests of the particular private parties involved in the case. These interests can fall into either of two categories: (i) the health and well-being, both physical and economic, of its residents; and (ii) asserting its rights in the federal system.

The first category is the interest at issue in this case. For this interest, a state must allege more than an injury to an identifiable group of individual residents, instead it must identify an injury or issue that is relevant to the population at large. Although there is no tipping point in terms of percentage of the population affected, there must be some general interest for the populace. One clue as to whether there is a quasi-sovereign interest is whether the issue is one that a state would, if it could, attempt to remedy with its lawmaking powers. A court considers both the indirect effects of the alleged injury as well as the direct effects.

When a state seeks only compensatory and/or punitive damages, courts have held that there is no quasi-sovereign interest. *See, e.g., Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 33 (D. D.C. 2009); *Levi-Strauss*, 471 F.Supp. at 371. However, if the state requests relief in the form of injunctions or civil penalties, even in conjunction with compensatory damages,

courts have held that a quasi-sovereign interest is at stake. *See, e.g.*, *SDS West Corp.*, 640 F. Supp.2d at 1052; *Abbott Labs.*, 341 F. Supp. 2d at 1062–63; *New York ex rel Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 705–06 (S.D. N.Y. 1982).

This case presents the latter scenario. The Complaint asserts three violations of Colorado's Unfair Housing Practices laws, for which injunctive remedies, civil penalties and compensatory damages for Ms. Moores are sought. CCRC seeks prospective injunctive relief regarding Wells Fargo's practices as they may apply to future customers—that Wells Fargo be ordered to cease and desist in their practice of discriminating against persons because of marital status, that Wells Fargo be permanently enjoined from unlawfully discriminating on the basis of marital status, that Wells Fargo be ordered to take affirmative actions to ensure that there is no future unlawful discrimination. In addition, CCRC requests that Wells Fargo be required to pay civil penalties pursuant to Colorado statute. CCRC argues that these remedies will benefit the populace of Colorado as a whole by helping to eradicate discrimination on the basis of marital status. Because this action is brought to benefit the State's population as a whole and not simply Ms. Moores, a quasi-sovereign interest is at stake.

The Court therefore finds that the State of Colorado is a real party in interest and that it brings this action in its *parens patriae* role. Because Colorado is not a citizen of any state, Wells Fargo has not demonstrated the complete diversity required by 28 U.S.C. §1332(a) and § 1441(b). *Lincoln Prop. Co.*, 546 U.S. at 89.[9]

---

[9] It is of no significance to this analysis that Ms. Moores may benefit from this action or might also be considered a real party in interest. The absence of citizenship status for Colorado precludes a finding of complete diversity among the parties. *See, e.g.*, *Hood v. AstraZeneca Pharms. LP*, 744 F.Supp.2d 590, 596 (N.D. Miss. 2010); *Hoffman-La Roche*, 639 F.Supp.2d at 33–34; *Microsoft Corp.*, 428 F.Supp.2d at 25.

**IT IS THEREFORE ORDERED** that

(1)     Plaintiff Colorado Civil Rights Commission's ("CCRC") Motion to Remand **(#6)**

is **GRANTED**.

(2)     Pursuant to 18 U.S.C. § 1447(c), this case is **REMANDED** to the Colorado

District Court for Jefferson County.  The Clerk of the Court shall transmit the

entire case file of this action to the Clerk for the District Court in Jefferson County.

(3)     The Clerk of Court shall thereafter close this case.

Dated this 1st day of July, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge